## Lang v. Bach.

(Decided February 14, 1911.)

### Appeal from Breathitt Circuit Court.

1.  Contract—Counterclaim—Instruction.—Plaintiff sued to recover the contract price of certain timber sold to defendant. Defendant claimed that plaintiff sold him certain timber in addition to that described in the petition, and that he had been enjoined from cutting a portion of the additional timber and from removing a portion which he had already cut. Held, that an instruction authorizing a recovery on the defendant's counterclaim for only the standing timber, was erroneous, as defendant, if his contention was proper, was entitled to recover not only for the standing timber, but also the timber which he had cut and had been enjoined from removing.

2.  Evidence—Where plaintiff claims that he sold defendant the timber within a certain boundary, and the defendant claims that plaintiff sold him the timber from a larger boundary, evidence to the effect that plaintiff agreed to select a certain party to point out the boundary and did appoint such party who pointed out the boundary to defendant's agent who branded the trees within the boundary so pointed out, is admissible as bearing on the question of what timber was actually sold.

3.  Liquidated Claim—Interest.—The law is now well settled that a
    liquidated claim, whether oral or written, carries with it interest
    from the time it was due, in the absence of any agreement to the
    contrary.

G. W. FLEENOR for appellant.

C. A. BACH, GRANNIS, BACH and KASH & KASH for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COM-
MISSIONER—Reversing.

Appellee, J. J. C. Bach, brought this action against
appellant, J. E. Lang, to recover $300, the purchase price
of certain timber which he alleged he had sold to Lang,
and for which the latter had failed and refused to pay.
The petition sets forth the tracts of land on which the
timber was located. A credit of $51.60 was admitted.
After denying certain allegations of the petition, appel-
lant alleged in his answer that he bought of appellee all
the white oak trees on all of the land on the falling
grounds or falling waters of Ben Smith Branch of South
Fork of Quicksand Creek, excluding all of the timber on
the right hand side of Boat Gunwale Branch, from
its mouth up to where the pipe line crosses the
Boat Gunwale Branch, and excluding all of Bear
Wallow Branch; that of the timber so purchased
by him he had cut about 100 trees, but when he
proceeded to cut other trees which appellee had
sold him, the Kentucky Union Company, a corpora-
tion, enjoined him from cutting 75 or 80 of them, as well
as from removing 49 trees which he had already cut and
made into staves; and he also charged that it cost him
$2.25 per tree to have the 49 trees manufactured into
staves, making $110.25 which he pleaded as an off-set
and counterclaim against appellee. In addition to this,
he alleged that the trees which he was enjoined from cut-
ting were the best in size and quality of the timber he
bought from appellee, and were worth, at least, $1 per
tree more than the trees he had cut, or the sum of $125,
which he also pleaded as a set-off and counterclaim
against appellee. By amended answer, appellant set
forth the fact that he had been enjoined by the Kentucky
Union Company from cutting or removing a portion of
the timber sold him by appellee, and that the issues in
that action should be determined before the present case
was tried. Appellee did not demur to the answer or

amended answer, but filed a reply controverting their allegations. The effect of the reply, however, was to admit the title of the Kentucky Union Company to any timber that lay outside of the boundary set forth in the petition, although it denies that the Kentucky Union Company had enjoined appellant from cutting or removing any timber that appellee had sold him. A trial before a jury resulted in a verdict for appellee for the sum of $300, without interest, less a credit of $51.60, and $41 for trees left standing. Appellee asked for a judgment for interest notwithstanding the verdict. This the court allowed, and judgment was entered accordingly. From that judgment this appeal is prosecuted.

According to the evidence for appellee, he went upon the land in question and pointed out the boundary lines of the timber he sold appellant, and appellant cut from this boundary all the white oak trees. He never sold to appellant any trees outside of this boundary, or any of the trees which appellant was enjoined from cutting or removing. According to the evidence for appellant and his witnesses, the boundary lines as pointed out to him by appellee included timber in addition to that which appellee claims was sold him. There were 49 trees which appellant had cut and made into staves, and also 41 trees still left standing. Appellee agreed to send Cam Tharp along to show the timber and the lines, so the timber could be branded.

While Cam Tharp was on the stand, he was asked by the attorney for appellant, on cross-examination, to state whether or not he went upon the land at the direction of appellee and showed Dillard Gabbard the trees which appellee had sold, so that he could brand the trees with defendant's brand. To this question appellee objected, and the court sustained the objection. As no avowal was made, we can not pass upon the propriety of the court's action. The court also refused to permit the deposition of Dillard Gabbard to be read in evidence. This deposition is made a part of the bill of exceptions and may be properly considered by this court. According to the testimony of this witness, appellant employed him to brand the timber. Appellee agreed to furnish a man to show him the lines. He did furnish Cam Tharp, and the witness branded the timber inside the lines which Tharp showed him.

We think the court erred in excluding this evidence from the consideration of the jury. While it is true, appellee did not sell appellant any branded trees, he did sell him all the white oak trees within a certain boundary which he pointed out in a general way. If, then, he did as a matter of fact agree to furnish a party to point out the lines more particularly, and this party pointed out the lines, and appellant had the trees branded within the lines so pointed out these were all facts which the jury could properly take into consideration in determining what timber was actually sold.

The court instructed the jury as follows:

"The court instructs the jury that they must find for the plaintiff three hundred dollars sued for and may in their discretion allow interest thereon from the maturity of said contract until paid subject to the credit of $51.60 paid through Hargis Bros.

"The defendant can not recover anything on his counterclaim unless the jury shall believe from the evidence that the plaintiff in fact sold him timber outside of the two boundaries set out in the petition. If the jury so believes from the evidence then they shall give the defendant credit therefor of its value standing on the trees, such as the defendant has not already received.

"The jury can not consider the evidence offered as to the branding of the timber.

"If the jury believes from the evidence that the 41 standing trees complained of by the defendant or any number of them, are outside of the two boundaries of the plaintiff as set out in the petition, and shall further believe from the evidence that the plaintiff showed these trees to the defendant and included them in the sale, then their value in the tree at the time of said sale should be credited on the judgment as directed in the first instruction, but unless the jury shall believe the said trees were so included in the sale nothing can be allowed the defendant for their value."

To these instructions counsel for appellant objected and excepted, and asked for time to prepare other instructions. The court declined to give any time. The bill of exceptions then goes on to state that the court called the attention of appellant's counsel to the second instruction, and that counsel agreed with the court that it was the law on that issue and expressed himself as satisfied with the instruction. The fact remains, how-

ever, that appellant's counsel did object and except to the instructions. While he may have agreed that the second instruction was the law of the case, the bill of exceptions does not state that he consented thereto; on the contrary, he objected to all the instructions. That being true, he did not waive his right to complain of any error in the instructions merely because he was under the mistaken belief that one of them properly presented one of the issues involved.

If, as a matter of fact, appellee sold to appellant any trees outside of the two boundaries described in the petition, and appellant had been enjoined from cutting certain of these trees and removing the staves which he had made from certain others of such trees, he had a right to recover on his counterclaim, not only for the trees left standing, but for those which he had cut and made into staves. While the second paragraph of the second instruction apparently conforms to this idea of the law, yet when considered in connection with the last instruction, which permits a recovery on the counterclaim for only the 41 standing trees, it is manifest that the instructions were calculated to mislead and confuse the jury. That being true, the giving of such instructions was prejudicial error.

While it is true that appellant, by an amended answer and counterclaim, asked that the Kentucky Union Company be made a party to the action and required to litigate its title to certain trees which appellant claims appellee sold him, and the court refused to permit this amended answer and counterclaim to be filed, we can not consider this alleged error for the reason that the amended answer and counterclaim was not made a part of the record, either by order of the court or by being embraced in the bill of exceptions. However, if the issues involved in that action have not been decided, the court should, on the return of this case, consolidate the two cases and hear them together. This is the only way by which substantial justice can be done all the parties to this action. If, as a matter of fact, appellee sold appellant timber outside of the two boundaries described in the petition, and the Kentucky Union Company has superior title thereto, appellant should not be required to pay for the timber twice. On the other hand, if there is no failure of title as to any portion of the timber which appellant claims appellee sold him,

then appellant can not reap the benefit of such purchase and at the same time sustain a counterclaim against appellee.

The court did not err in giving judgment for interest notwithstanding the verdict of the jury. While in the earlier opinions the allowance of interest was made to depend upon the fact that the claim was liquidated and supported by a written contract, the law is now well settled, that a liquidated claim, whether oral or written, carries with it, as a matter of law, interest from the time it was due, in the absence of any agreement to the contrary. (Henderson Cotton Mfg. Co. v. Lowell Machine Shops, 86 Ky., 668.) On the next trial the court should authorize the recovery of interest on the difference between $300, and the amount of the credit of $51.60 added to any sum which the jury may allow appellant by way of counterclaim, from December 31st, 1903. The court in lieu of the instructions given, will instruct the jury as herein indicated.

Judgment reversed and cause remanded for a new trial consistent with this opinion.